

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS

Gerald C. Mann
~~WILL WILSON~~XXXX
**ATTORNEY GENERAL**

Hon. Tom L. Beauchamp
Secretary of State
Austin, Texas

Dear Sir:

Opinion No. O-1028
Re: Is proposed charter of "Tax-
payers Association of Nacog-
doches County" an educational
undertaking within the pur-
view of subdivision 2 of
Art. 1302, Revised Civil
Statutes of Texas, 1925?

This will acknowledge receipt of your letter of June 23,
1939, with which you submit the proposed charter of the Tax-
payers Association of Nacogdoches County, Texas, with a
request that we advise you whether or not the purpose therein
expressed warrants the issuance of a charter under subdivision
2 of Article 1302, Revised Civil Statutes of Texas, 1925.

The purpose clause of such proposed corporation is:

"The purpose for which this corporation is formed
is to educate the members of this Association and
the public on questions of Taxation, and to use its
influence to obtain the economical expenditure of
public money, the equitable application of the taxing
power and a fair distribution of all benefits of
government."

We have carefully considered such application for
charter and especially the purpose clause as hereinabove
quoted, and necessarily reached the conclusion that such pur-
pose clause does not affirmatively reflect an educational
purpose within the purview of the statute.

A departmental construction of long standing has for-
bidden the issuance of charters similar to the one in ques-
tion. See opinion by Judge George B. Christian, Reports of
the Attorney General, 1924-1926, page 222, citing with approval
an opinion rendered during the administration of Chief Jus-
tice Cureton on March 26, 1919. See, also, opinions by
Assistant Attorney General Neal Powers, dated June 10, 1932
and August 20, 1932, and opinion no. O-1024 by Hon. Morris

Hodges.

The rule as to the statement of the purpose clause of a corporation is laid down in 10 Tex. Jur., p. 622, s 31, as follows:

"The proposed charter is required to state the purpose for which the corporation is formed. The main purpose of this requirement is, first, to protect the public against too great a delegation and any usurpation of power, and, second, to afford the means whereby right to a claimed power, or rightful use of an admitted power, may be tested. This should be done with sufficient clearness to enable the Secretary of State to see that the purpose specified is one provided for by the statute, and it must therefore define with certainty the scope of the business of undertaking to be pursued."

We quote from the opinion of Judge Christian, supra, as follows:

"The test that must necessarily be applied to any enterprise to determine whether it is primarily educational in its nature should exclude the educational results that are purely incidental. The paramount purpose of power of the enterprise must alone determine the nature of its undertaking. The powers and functions of all enterprises are the outgrowth of educational developments, and the common experience of men will determine the application of such powers and functions to any given enterprise. The development of the enterprises known to the world has resulted in the grouping of related functions which have been drawn to specific enterprises, and each of such enterprises is distinguished one from the other by the primary function within each group drawn to it. Such enterprises may embrace common functions that are subsidiary and incidental to the exercise of that paramount function. This is common knowledge, and even the courts of our land would take judicial notice of the fact. It may be safely assumed that a legislative body, whose personnel is composed of men drawn from all the walks of life, in enacting legislation authorizing the incorporation of business enterprises is cognizant of the common experience of mankind that paramount functions are peculiar to certain enterprises. It follows, we think, that the Legislature has classified corporations under our laws according to the principal function exercised by the enterprise from which it has its inception.

"That our Legislature intended that corporations created for education should have their powers defined within a group of powers which was the outgrowth of the developments of strictly educational enterprises, is exemplified by the fact that subdivision 2 of chapter 9, Revised Civil Statutes, 1925, dealing with educational corporations, defines the powers of the faculty of educational institutions and grants to the trustees of such institutions the authority to provide for teachers and agents. In short, the Legislature has undertaken to authorize the creation of educational institutions under subdivision 2 of Article 1302, Revised Civil Statutes, 1925, and to define the rights and duties of corporations so organized in enactments that relate to colleges, academies, universities and other corporations organized for the purpose of promoting education. Again in Article 7094, Revised Civil Statutes, 1925, the Legislature has exempted from the payment of a franchise tax corporations organized for 'strictly educational purposes'. It is pertinent to our inquiry to determine whether all corporations organized under subdivision 2 of Article 1203, Revised Civil Statutes, 1925, for educational purposes are exempt from the payment of a franchise tax or whether the exemption is determined by the powers exercised by the corporation."

"In an opinion rendered by Hon. C. M. Cureton, Attorney General, on the 26th of March, 1919, the Secretary of State was advised that a corporation chartered as an educational undertaking is by force of the law a strictly educational institution and that its purpose and only purpose by reason of the law is strictly an educational one. The question for determination was whether a business college incorporated as an educational undertaking under Section 2 of Article 1302 is exempt from the payment of a franchise tax under Article 7094. After discussing the authorities bearing on the question of the exemption of educational enterprises from taxation, Mr. C. W. Taylor, Assistant Attorney General, who wrote the opinion says:

"The above reasoning leads us to the conclusion that the word 'strictly' used in the clause for strictly educational purposes embodied in the statute exempting certain corporations from the franchise tax, has no signification or meaning, because a corporation chartered as an educational undertaking can lawfully engage in no other pursuit. It is bound by the purpose clause of its charter, which is limited by the statute under which it is incorporated. In other words, a corporation chartered as an educational undertaking is by force of

the law a strictly educational institution, and its
purpose and only purpose is by reason of the law a
strictly educational one. So, to our minds, the
Legislature has added nothing to the meaning of this
clause by inserting therein the word 'strictly'.

"In view of the foregoing, the conclusion seems in-
evitable that an educational undertaking as contemplated
by subdivision 2 of Article 1302, Revised Civil Statutes,
1925, means a corporation having for its primary purpose
the giving of instruction in some recognized field of
knowledge, and that corporations may not be created under
this subdivision of our statute where it is apparent
that the instruction to be given and the educational
benefits to be derived therefrom are incidental to the
exercise of the primary functions of the corporation.
The Legislature intended that corporations created under
this subdivision of the statute should engage in something
more than the incidental education which is necessarily
derived from business enterprises whose primary purpose
is to advertise the merits of a particular business under-
taking."

Looking to the proposed charter which furnishes the basis
of your inquiry, it is no doubt true that the undertaking
therein contemplated would tend to educate, to some extent,
at least, all those who might come in contact with such organiza-
tions. But, as hereinabove pointed out, the educational purpose
of a proposed corporation must be the primary one and not merely
an incidental purpose that but naturally results from an en-
deavor. The purpose must be for such an educational undertaking
as is understood to be educational in the ordinary affairs of
men. A mere incidental purpose or a limited result is insuf-
ficient. See in re Day De Peysters Estate, 104 NO. E. 714,
State vs. Business Men's Athletic Club, 163 S. W. 901.

We must necessarily conclude, and you are so advised, that
the purpose clause, above set out, is not for an educational un-
dertaking within the purview of subdivision 2, Article 1302,
Revised Civil Statutes of Texas, 1925. We find no statutory
authority for the granting of such a charter as is made the basis
of your inquiry.

We return, herewith, the proposed charter of the Taxpayers
Association of Nacogdoches County, Texas.

Trusting that this satisfactorily disposes of your inquiry, we are

                              Very truly yours

                         ATTORNEY GENERAL OF TEXAS


              By              Lloyd Armstrong
                              Assistant

LA:omb/pm
ENCL.


APPROVED JULY 22, 1939
s/ W. F. Moore
FIRST ASSISTANT
ATTORNEY GENERAL

APPROVED OPINION COMMITTEE
By T.D.R., Chairman